# Listie Coal Co., Appellant, *v.* Farmers' National Bank.

*Replevin—Bonds—Banks and banking—Title to bonds—Evidence—Past due coupons—Pledge of bonds.*

1. In an action of replevin by a corporation against a bank to recover bonds of plaintiff pledged as collateral security for the debt of another company, where the jury finds on sufficient proof that plaintiff did not own the bonds, such finding is determinative

of the controversy, and the question whether the defendant bank was the holder of the bonds in due course drops out of the case.

2. Where the minutes of plaintiff and other evidence establishes that the bonds in question were issued to the president of the company in payment of coal lands conveyed by him to the company, and that he subsequently used them as collateral security for a loan by defendant bank to another company of which he was president, plaintiff cannot assert ownership, in the absence of proof of reconversion of them into its treasury.

3. In such case, plaintiff cannot establish title to the bonds by offers of proof to show that its books disclosed entries indicating that the bonds were in its treasury.

4. Nor is the fact material that the bonds had been removed from a safe-deposit box of plaintiff, where it appears that the president, who had pledged the bonds, had rightful access to such box.

5. Nor is a letter, from the president to plaintiff offering to return certain bonds to its treasury, material, where such letter did not go to the title of the bonds in question at the time they were pledged.

6. Nor is it material that the president had misappropriated other bonds belonging to plaintiff.

7. The circumstance that the bonds had past due coupons upon them uncollected for several years, is immaterial, in view of the finding that the bonds did not belong to plaintiff.

8. It seems that the presence of such coupons was not sufficient to put the defendant bank on notice of any infirmity of title to the bonds.

Argued September 27, 1926. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 41, March T., 1926, by plaintiff, from judgment of C. P. Somerset Co., Dec. T., 1924, No. 123, on verdict for defendant, in case of Listie Coal Co. v. Farmers' National Bank. Affirmed.

Replevin to recover bonds. Before BERKEY, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were, inter alia, various rulings and instructions, quoting record.

*Ernest O. Kooser,* with him *Francis J. Kooser,* for appellant.—The bank took the bonds from a messenger, knowing they were not the property of the messenger, and the bank was bound to inquire from him as to the ownership of the bonds, and how they came into his hands: Interstate Securities Co. v. Bank, 231 Pa. 422; Kern's Est., 176 Pa. 373.

The presence of the unpaid coupons was material: First Nat. Bank of St. Paul v. Scott Co. Com'rs, 14 Minn. 77; Parson v. Jackson, 99 U. S. 432.

*C. L. Shaver,* with him *Boose & Boose,* for appellant. —The fact that there were unpaid coupons on the bonds was immaterial: Railway v. Sprague, 103 U. S. 554; Buffalo L., T. & S. D. Co. v. Gas & Electric Light Co., 162 N. Y. 67; McElrath v. Ry., 55 Pa. 189; Cromwell v. Sac County, 96 U. S. 63.

The bank acted in good faith in accepting the bonds as collateral for the loan, under the honest belief that they belonged to John C. Brydon: Cochran v. Bank, 209 Pa. 34; Murray v. Lardner, 69 U. S. 857; Ind. & Ill. Cent. Ry. v. Sprague, 103 U. S. 554; Greensburg T. & Tr. Co. v. Aspinwall-D. C., 266 Pa. 160.

OPINION BY MR. JUSTICE SCHAFFER, November 22, 1926:

The special finding of the jury in this case, supported as it is to our minds by completely satisfying evidence, makes it unnecessary to consider seriatim the thirty-four assignments of error laid before us.

The action was replevin to recover six unregistered coupon bonds of plaintiff company, which had been pledged by J. C. Brydon, president of the Quemahoning Coal Company, to the defendant bank as collateral security for the Quemahoning corporation's note. The jury, in answer to one of the questions submitted by the trial judge, found that the plaintiff did not own the bonds. As this finding was supported by the proofs, it is determinative of the controversy, and the question

whether the defendant bank was the holder of the bonds in due course drops out of the case.

Brydon, who was president of plaintiff company and also of the Quemahoning Company, maker of the note, and Daniel B. Zimmerman combined certain coal lands which they owned, and conveyed them to plaintiff company, in which they and Ralph S. Zimmerman were the only persons interested. The minute book of the Listie Coal Company shows a resolution, adopted on motion of Ralph S. Zimmerman, seconded by Daniel B. Zimmerman, that "The securities of this company be issued as purchase money and consideration for the properties conveyed by D. B. Zimmerman and J. C. Brydon." It was testified by Brydon and admitted by Zimmerman that the latter received certain of the bonds belonging to him and it was shown by Brydon that he received $97,000 of the bonds, among them being the six in controversy, which he held for the joint account of himself and Zimmerman as their interests might appear. Brydon said that the bonds in question had been issued to him and Zimmerman in payment for the properties they had conveyed to the Listie Coal Company and this was confirmed by the company's minute book. He testified that the bonds belonged to him individually, that his title to them had never been questioned, and that he pledged them for the debt of the Quemahoning Company of which he was president. Zimmerman denied that this was so, claiming that the bonds still were the property of the Listie Coal Company. It was shown however that he not only voted for the resolution directing the issuing of the bonds to himself and Brydon in payment for their properties, but that he seconded the resolution when it was offered. It further appeared that Brydon, on receipt of the bonds, wrote Zimmerman that he held among others the bonds in question for their joint account. This declaration was not repudiated by Zimmerman.

If the bonds were issued by the company to Brydon and Zimmerman in payment for their properties, it is

difficult to see how the claim of the plaintiff now to own them could be maintained, as it showed no reconversion of them into its treasury. The weakness in plaintiff's claim that the bonds in controversy were to be kept and remain in the treasury of the company to meet its further business requirements is that the records of the company show otherwise. The fact that the bonds were in the safe-deposit box of plaintiff company and were removed therefrom on Brydon's order, when he pledged them with the bank, loses significance, so far as he is concerned, when account is taken of the fact that he was president of the Listie Coal Company and had the right of access to its safe-deposit box. The cashier of defendant bank, with whom the loan was actually negotiated, testified that he had no knowledge of any defect in the title of the bonds in Brydon at the time the latter's agent delivered them to the bank. The witness knew that Brydon was president of the Listie and Quemahoning Companies. The president of the bank knew that Brydon's lands had been put into the Listie Company and that the bonds of the company had been issued in payment therefor; hence there was nothing to excite suspicion by the pledge of one company's bonds for the debt of the other.

It is true Zimmerman testified that the Listie Coal Company was the owner of the bonds at the time they were pledged to the bank, that Brydon had no right to use them for his private purposes or for the benefit of the Quemahoning company. This statement of course did not determine the ownership of the bonds but went to the jury with the other evidence in the case for their consideration.

The offers of proof by plaintiff to show that its books disclosed entries indicating that the bonds were in its treasury were properly refused. It could not prove title to the bonds in itself in this way. The proffer of a letter from Brydon to plaintiff, subsequent to the pledge of the bonds in controversy offering to return certain

bonds to its treasury was rightly rejected as it did not go to the title of the bonds in question at the time they were pledged. It was not error to refuse testimony tending to show that Brydon had misappropriated other bonds belonging to plaintiff. Such evidence had no bearing on the title to the bonds with which we are dealing.

The circumstance that the bonds had past due coupons for four and a half years attached to them when turned over to the bank, even if it did put the officials of the latter on notice of infirmities, which we think it did not, under the great weight of authority (McElrath v. Pittsburgh & Steubenville R. R. Co., 55 Pa. 189; Cromwell v. Sac County, 96 U. S. 51; Indiana & Illinois Central Ry. Co. v. Sprague, 103 U. S. 554; Morgan v. United States, 113 U. S. 476; National Bank of North America v. Kirby, 108 Mass. 497; 2 Fletcher, Cyclopedia Corporations, 1917, section 1021; 3 Thompson on Corporations, 2nd ed. 1909, section 2287), is of no moment now as the securities by the jury's finding do not belong to plaintiff.

The controlling question, the ownership of the bonds, was fairly submitted to the jury, whose province it was under the proofs to pass upon it.

The assignments of error are overruled and the judgment is affirmed.